NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0160n.06

No. 13-5517

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|                                          |     |                            |
| ---------------------------------------- | --- | -------------------------- |
| MARY CROWDER,                            | )   | **FILED**                  |
|                                          | )   | Feb 27, 2014               |
| Plaintiff-Appellant,                     | )   | DEBORAH S. HUNT, Clerk     |
|                                          | )   |                            |
| v.                                       | )   | ON APPEAL FROM THE         |
|                                          | )   | UNITED STATES DISTRICT     |
| RAILCREW XPRESS, d/b/a Railcrew          | )   | COURT FOR THE WESTERN      |
| Xpress, Corp., and Railcrew Xpress,      | )   | DISTRICT OF TENNESSEE      |
|                                          | )   |                            |
| Defendant-Appellee.                      | )   |                            |
|                                          | )   |                            |
|                                          | )   |                            |
|                                          | )   |                            |

BEFORE: SUHRHEINRICH, GIBBONS, and COOK; Circuit Judges.

**PER CURIAM.** Plaintiff Mary Crowder (Crowder) appeals from the order granting summary judgment to Defendant Railcrew Xpress, LLC (Railcrew). We affirm.

## I.

On November 26, 2006, Railcrew hired Crowder, an African American female, for the position of radius driver. Crowder worked as a radius driver initially at Railcrew's Marion, Arkansas facility, and then later at Railcrew's Memphis facility. She was over forty years old when she was hired. Crowder is a convicted felon, having been convicted of unlawful possession of identification documents. She was incarcerated for two and a half years.

Crowder's employment was terminated on June 4, 2009, for allegedly misusing company property. Specifically, she was charged with removing gas cards and security gate cards from vans, in violation of company policy. Crowder claims this is a false accusation.

Crowder alleges that in October 2008, Railcrew's lead local area manager, William Walker, promoted her from radius driver to lead driver. Crowder maintains that she met with Walker, Chris Arganbright, the regional manager, and lead driver Sean Jones, at a restaurant to discuss the terms of her position and at that time she was provided a list of the vehicles for which she would be responsible. However, she was never given a written job description of the lead driver position and was not compensated for her work in this position, like her counterpart, Jones. She states that she quit the lead driver position on February 13, 2009, because she "had been doing the work without being paid."

Crowder claims that in retaliation for her demands to be paid, Railcrew reduced her workdays from six days to three days a week. She also asserted that Railcrew terminated her employment only after management overheard her calling the Equal Employment Opportunity Commission (EEOC).

Jones was the lead driver at the Memphis location from September 1, 2008 to February 6, 2010. The job description document for the lead driver position states that the lead driver is "responsible for front-line day-to-day supervision of the vehicle fleet and drivers," as well as "interacting with peers, supervisors, and managers at all levels." Among other duties, lead drivers are responsible for scheduling and guaranteeing regular maintenance repair of vehicles; conducting evaluations of drivers; conducting applicants' driver training; assigning van yards to each yard shift; distributing payroll checks; reporting to the area manager or the location manager about employee issues, worker compensation injuries, and weather conditions; and conducting drug and alcohol tests. The job description also states that a lead driver "can't have a felony conviction within the past 7 years," or "an incarceration, or release within the past 5 years."

On September 30, 2009, Crowder filed a charge of discrimination with the EEOC alleging retaliation. On October 14, 2009, she filed an amended charge, alleging sex and age discrimination under Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act (ADEA), respectively. The EEOC issued a notice of charge of discrimination to Railcrew on October 15, 2009, based on age and sex, attaching the October 14 charge. On March 15, 2011, the EEOC issued its notice of right to sue.

On June 14, 2011, Crowder filed this action. Her amended complaint alleges race, age, and sex discrimination, plus retaliation, in violation of Title VII and the Equal Pay Act. On December 7, 2012, the district court granted in part and denied in part Railcrew's motion for partial dismissal, dismissing Crowder's race and retaliation claims.

On March 20, 2013, the district court granted summary judgment to Railcrew on the remaining claims. Specifically, the district court held that Crowder failed to establish a prima facie case of sex discrimination under Title VII because she did not demonstrate that she was qualified for the lead driver position or that she was similarly-situated to Jones. The court found that Crowder was not "even minimally qualified for the lead driver position," because her status as a convicted felon alone prohibited her from holding that position, and that she offered no proof to rebut Railcrew's documented evidence (including paystubs, job descriptions, and testimony) that Crowder never held the lead driver position and never performed duties beyond her radius driver position. The court also held that Crowder failed to establish a prima facie case of sex discrimination under the Equal Pay Act. As with the Title VII claim, Crowder provided no proof that her job duties were similar to Jones's. The court dismissed Crowder's age discrimination claim under the ADEA because she failed to show that she was qualified for the

3

position of lead driver and that she was treated differently than a similarly-situated, younger employee.

Crowder presents three issues on appeal: (1) that the district court erred in dismissing her Title VII retaliation claim for failure to exhaust administrative remedies; (2) that the district court erred in dismissing her retaliation claim for failure to state a claim; and (3) that she introduced sufficient evidence of gender based unequal pay to meet her burden under Federal Rule of Civil Procedure 56.

## II.

## A.

Railcrew challenges this court's jurisdiction over Crowder's retaliation claim. Railcrew claims that our review is limited to Crowder's appeal of the March 20, 2013 order granting Railcrew's motion for summary judgment, because that is the only order referred to in the notice of appeal. Railcrew therefore asserts that we lack jurisdiction to review Crowder's claim that the district court erred in dismissing her retaliation claim. The notice of appeal states: "Notice is hereby given that Mary Crowder, Plaintiff in the above named case, by and through her attorney of record, hereby gives notice to the Court of her desire to appeal to the Sixth Circuit Court of Appeals from the Judgment of the Honorable John T. Fowlkes on March 20, 2013."

Rule 3(c)(1)(B) of the Federal Rules of Appellate Procedure requires the appellant to "designate the judgment, order, or part thereof being appealed." These requirements are jurisdictional and may not be waived, "even for good cause shown." *Schramm v. LaHood*, 318 F. App'x 337, 342 (6th Cir. 2009) (per curiam) (citing, *inter alia*, *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988)). "Ordinarily, appeal from a final judgment draws into

4

question all prior non-final rulings and orders." *Crawford v. Roane*, 53 F.3d 750, 752 (6th Cir.1995) (internal quotation marks and citation omitted).

In this case, the district court granted summary judgment to defendant and entered final judgment the same day, March 20, 2013, by separate order. Crowder's notice of appeal clearly states that it is from the "Judgment." We have jurisdiction to review Crowder's retaliation claim.

**B.**

Crowder argues that the district court erred in dismissing her Title VII claim for failure to exhaust administrative remedies. Crowder's employment was terminated in June 2009. She filed a charge of retaliation September 30, 2009. It stated that:[1]

> On or around June 8, 2009, I was discharged from the position of Driver. I had worked for the above-named company since June 2006.
>
> I was advised that I was being discharged for theft and misusing company property.
>
> I believe that I was discharged in retaliation for asking for five (5) months pay that the company owes me and for signing an authorization card provided by the United Professional & Service Employees Union, Local 1222.

On October 14, 2009, Crowder filed another charge of discrimination with the EEOC. This one stated that she was made lead driver, but not given lead pay. In it, Crowder claimed that she was initially advised by the area manager that she would be given her pay, but that the payroll manager later told her that Railcrew "never asked me to do the Lead job (which is not true)." Crowder stated that she believed that she had been discriminated against because of her "sex (female) and age (46)" in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act, respectively, and that she was "aware that the 35-year-old male that served as the Lead Driver prior to me was paid for the position." The EEOC issued a

---

[1] The word "VOID" is written across this document.

5

notice of charge of discrimination to Railcrew on October 15, 2009. The notice listed the "circumstances of alleged discrimination" as sex and age, and attached a copy of Crowder's October 14, 2009 charge of discrimination. The EEOC issued a right to sue letter on March 15, 2011, informing Crowder that she had 90 days to file her Title VII and her age discrimination claims under the ADEA, or she would lose her right to sue. The notice also informed Crowder that she did not need to file an EEOC charge as to her claims brought under the Equal Pay Act. The notice did not mention retaliation.

Crowder alleges that she filed a timely charge alleging retaliation with the EEOC on September 30, 2009, and that Railcrew was on notice of her retaliation claim because the retaliation charge bears the same EEOC charge number as all subsequently filed documents.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee based on sex, 42 U.S.C. § 2000e-2, or because she has opposed unlawful discrimination, *Id*. § 2000e-3(a). Title VII requires that a discrimination charge be timely filed with the EEOC. *Id*. § 2000e-5(e)(1). However, before bringing suit under Title VII, a claimant must exhaust her administrative remedies. *Scott v. Eastman Chem. Co*., 275 F. App'x 466, 470-71 (6th Cir. 2008) (citation omitted). The exhaustion requirement serves to trigger an investigation, which gives notice to the employer of alleged wrongdoing. *Id.* at 471. Yet the exhaustion requirement "is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading." *Id.* (internal quotation marks and citations omitted). Thus, the EEOC complaint is to be construed liberally, "to encompass all claims reasonably expected to grow out of the charge of discrimination." *Id.* (internal quotation marks and citation omitted). "The general rule is that a plaintiff may file suit only in regard to

6

the claims asserted in the EEOC charge and those within the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Id.* (citation omitted). "Under this 'expected scope of investigation' test, a plaintiff may fully exhaust her administrative remedies on a claim even if the claim was not actually investigated by the EEOC, or specifically stated in the charge." *Id.* Furthermore "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.* (internal quotation marks and citation omitted). A plaintiff is not penalized for the EEOC's failure to conduct a broader investigation. *Id.* (citation omitted).

The district court noted that the EEOC gave Railcrew notice of only the age and sex discrimination claims and did not clearly indicate to Crowder in the right to sue notice which claims she was permitted to file in federal court. However, the district court did not ultimately decide whether the retaliation charge was timely filed with the EEOC or whether it satisfied the expected scope of investigation test. Instead, the court determined that Crowder failed to establish a prima facie case for the retaliation claim under the facial plausibility standard. Specifically, the district court held that Crowder failed to show that she had engaged in a protected activity, that Railcrew had knowledge of her protected activity, and that she was terminated because of her protected activity. The district court noted that "[t]he only evidence" Crowder presented to meet her burden was (1) the September 30, 2009 EEOC charge and (2) a statement in her response to Railcrew's partial motion to dismiss alleging that management terminated her after overhearing her conversation with the EEOC.

The first question is whether the retaliation claim was properly exhausted. The September 30 charge alleged "retaliation" based on Crowder's claim "I believe that I was discharged in retaliation for asking for five (5) months pay that the company owes me and for

7

signing an authorization card provided by [the Union]." In other words, Crowder claims that she was retaliated against for complaining about her pay. But "[c]omplaining about one's pay is not statutorily protected; complaining about discriminatory pay is." *Shrader v. Palos Anesthesia Assocs., S.C.*, No. 01C 2450, 2004 WL 2167909, at \*8 (N.D. Ill. Sept. 24, 2004). Thus, Crowder did not exhaust her administrative remedies as to the retaliation claim in the September 30 charge.

The question then becomes whether her retaliation claim satisfied the "expected scope of investigation test." We think it probably does when the September 30 charge is read together with the October 14 charge, and conclude that the EEOC should have broadened the scope of its investigation. In any event, like the district court, we will assume for purposes of argument that Crowder exhausted her retaliation claim.

This means we must decide whether the district court properly dismissed Crowder's retaliation claim at the motion-to-dismiss stage. The district court held that Crowder's complaint "f[ell] short of her burden to establish a prima facie case for her retaliation claims." This was error. As this court recently made clear, a "district court's requirement that [a plaintiff's] complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent." *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). That is because the prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement. *Id.*

The correct standard is the "plausibility" standard in *Twombly* and *Iqbal*. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As outlined in *Keys*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."

8

> "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570, 127 S.Ct. 1955. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Keys*, 684 F.3d at 608.

Under Title VII of the Civil Rights Act it is "an unlawful employment practice" for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a).

Crowder's amended complaint asserts that Railcrew failed to pay her for her promotion and new work assignments, in spite of her repeated requests to the appropriate persons including Walker, Arganbright, and the payroll department; that Railcrew "compensated Sean Jones (a younger african american male) for his position as 'Lead Driver'"; and that she

> complained a minimum of 10 (ten) times to management regarding other employees of Defendant Railcrew Xpress with substantially equal job responsibilities, levels of skill, and effort and the same title "Lead Driver" (Sean Jones (in Memphis); James Nicolet (a Caucasian male in Sterling, CO); Jason Moore (a Caucasian male in Smithville, Tx); and Josephus Blackmore (an African American male in Amarillo, TX) as her were paid higher salaries[.]

Crowder alleges that she was denied overtime hours, and that her work hours and work week were significantly reduced, and that she was eventually terminated.

Crowder's amended complaint contains "sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" that Railcrew retaliated against her *because* she complained about discriminatory pay as compared to

9

her male coworkers. *See Keys*, 684 F.3d at 610 (internal quotation marks and citation omitted). We therefore conclude that the district court erred in dismissing her retaliation claim. The court further erred in discounting Crowder's "evidence" of retaliation at the motion to dismiss stage.

However, reversal and remand is not required here because Crowder ultimately cannot establish that she opposed unlawful discrimination, or had a "reasonable and good faith belief" that the acts she was reporting were Title VII violations, making remand futile. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012). As discussed in the next section, Crowder did not appeal the district court's grant of summary judgment on her sex discrimination claim under Title VII. This means that she does not dispute the factual findings that she was not qualified for the lead driver position and that she was not treated differently than similarly-situated male employees. Thus, on this record Crowder cannot establish retaliation for opposing unlawful discrimination or a reasonable belief that the acts she was reporting were Title VII violations. "Because this court's de novo review involves only application of legal propositions to the undisputed facts in the record, we may affirm on any grounds supported by the record even if different from the reasons of the district court." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002).

## C.

In her third claim on appeal, Crowder alleges that the district court erred in granting summary judgment to Defendant on her "gender based unequal pay" claim. As an initial matter we note that Crowder has abandoned her sex discrimination claim under Title VII by failing to brief it. Crowder's third argument, asserting that she "introduced sufficient evidence of gender based unequal pay upon which a jury could reasonably find" for her, addresses only the Equal Pay Act. Thus, she forfeited any challenge to the district court's grant of summary judgment on

the Title VII sex discrimination claim under 42 U.S.C. § 2000e-2(a)(1). Fed. R. App. P. 28(a)(8)(A); *Benge v. Johnson*, 474 F.3d 236, 245 (6th Cir. 2007) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration, quotation marks, and citation omitted)).

The EPA prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work. 29 U.S.C. § 206(d)(1). "A plaintiff may establish a prima facie case under the Equal Pay Act by showing 'an employer paid different wages to an employee of the opposite sex for substantially equal work.'" *Murphy v. Ohio State Univ.*, No. 12-4391, -- F. App'x --, 2013 WL 5878184, at *3 (6th Cir. 2013) (quoting *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 826 (6th Cir. 2000)); *See Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981).

We have held that "when an Equal Pay Act claim and a Title VII claim arise out of the same set of underlying facts, both stating a charge of wage discrimination, 'the standards of liability under the two statutes are sufficiently similar' that the disposition with respect to the two claims should be the same." *Clark v. Johnson & Higgins*, No. 97-4233, 1999 WL 357804, at *3 (6th Cir. May 28, 1999) (citing *Korte v. Diemer*, 909 F.2d 954, 957 (6th Cir. 1990)). *See also Kahn v. Dean & Fulkerson, P.C.*, No. 99-1015, 2000 WL 1769582, at *9 (6th Cir. Nov. 13, 2000) (same); *Lacey v. Robertson*, No. 99-1424, 2000 WL 876491, at *2 (6th Cir. June 21, 2000) (order) (same); *Henry v. Lennox Indus., Inc.*, 768 F.2d 746, 752 (6th Cir. 1985) ("A claim of unequal pay for equal work is essentially the same whether pursued under Title VII or the Equal Pay Act."). By the same token, the failure to make out a prima facie case of gender based wage discrimination under Title VII also defeats a claim under the EPA. *See* Clark, 1999 WL 357804,

11

at *4 (holding that the plaintiff failed to make out a prima facie case of wage discrimination claim under either Title VII or the EPA).

Because Crowder failed to establish a prima facie case under Title VII, she cannot establish a claim under the EPA.

Were we to decide whether Crowder established a prima facie claim under Title VII, we would hold that the district court correctly granted summary judgment on Crowder's sex discrimination claim. Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation ... because of such individuals' ... sex...." 42 U.S.C. § 2000e–2(a). *See also id*. § 2000e-2(h). Thus,

> A Title VII claimant may establish discrimination by producing either direct evidence of discrimination or circumstantial evidence which would support an inference of discrimination. The plaintiff may establish a prima facie case by showing that she is a member of a protected group, 2) she was subject to an adverse employment decision, 3) she was qualified for the position, and 4) she was replaced by an individual outside of the protected class or she was treated less favorably than a similarly-situated employee outside of the protected class. In a Title VII case where the plaintiff seeks to compare herself to another employee, she must prove that all relevant aspects of her employment situation were similar to those of the other employee.

*Conti v. Universal Enters., Inc.*, 50 F. App'x 690, 699 (6th Cir. 2002) (per curiam) (citations omitted).

As the district court determined, Crowder was not qualified for the lead driver position because she had been convicted of a felony within the past seven years and released from incarceration within the past five years, and therefore did not meet the minimum requirements for the position.

As the court further held, Crowder failed to produce sufficient evidence to contradict Railcrew's records, which included paystubs, job descriptions, and testimony from managers,

12

that she and Jones were comparable. Walker testified that he never asked Crowder to act as lead driver. Walker stated that Jones's duties as lead driver included helping with job fairs and maintenance of vans, performing ride-along evaluations of drivers, scheduling of driver shifts, sitting on safety meetings, and helping Walker. He further stated that Jones also helped administer road tests and drug tests of new hires. Melinda Luthye, the human resources manager, stated in her affidavit that Crowder was never offered or promoted to the position of lead driver or co-lead driver. Luthye provided a spreadsheet showing that during the time Crowder claimed to be a lead driver, she handled 20% of the inspections at most and that Jones consistently performed the majority of the inspections. Various other drivers also conducted inspections.

As proof of her lead driver status Crowder stated in her deposition that she was made responsible for 15-18 vans, and that she conducted road tests, distributed checks to employees and provided essential documents to Jones for faxing to appropriate departments. Yet Crowder also admitted in her deposition that she did not conduct ride-along evaluations of all drivers. She acknowledged that from October 2008 to February 2009, Jones took care of all the paperwork; that she was not responsible for reporting yard safety issues to the area manager or location manager; that she was not involved in reporting workers' compensation injuries; that she never assigned vans to each yard shift; that she reported to Jones to pick up the payroll checks; and that if she wanted overtime, she asked Walker or Jones. Thus, by her own admissions, Crowder was not performing many of the job responsibilities listed in the lead driver job description title, and attested to by Walker and Luthye. In addition, Crowder stated that other radius drivers sometimes picked up and dropped off vans for routine maintenance, undermining her assertion that she was a lead driver because she maintained 15 to 18 vans during the time frame at issue.

13

In short, as the district court held, it is clear that Crowder could not establish a prima facie case of Title VII sex discrimination, and the grant of summary judgment to Railcrew was proper.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.